**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-40-HRW

DERRICK WARNER                                                                                  PETITIONER

VS:            **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON                                                                                    RESPONDENT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Petitioner Derrick Warner, who is in the custody of the Federal Bureau of Prisons ("BOP") and confined in the Federal Correctional Institution in Ashland, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and a motion for expedited review of the petition.

This matter is before the Court for screening.[1] 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

CLAIMS

Petitioner claims that the BOP has applied invalidated regulations, 28 C.F.R. §570.20-.21, to grant him only a short stay in a Community Corrections Center ("CCC"),[2] rather than applying clear congressional intent and the factors to be considered in 18 U.S.C. §3621(b) and the BOP's own

---

[1] As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

[2] CCC's are also known as "halfway houses." Prisoners near the end of their sentences are often placed there to live and work under supervision as a part of preparing them to transition back into the community.

policy in Program Statement ("P.S.") 7310.04, at page 4, which correctly interprets 18 U.S.C. §§3621(b) and 3624(c) and under which he is entitled to up to a 6-month CCC placement. He asks this Court to order the BOP to disregard the regulations and follow the statutes and its own program statement.

## ALLEGATIONS

The petitioner has submitted a typewritten petition and separate motion to expedite its review, pleadings with which the Court is familiar. *See, e.g., Fauntleroy v. Patton*, 07-CV-36-HRW. He has attached copies of BOP print-outs showing relevant past dates and projected dates for Petitioner's release from confinement and preparation therefor.

Warner pleaded guilty to conspiracy to transport and receive stolen goods in the United States District Court for the Northern District of Georgia, and on June 8, 2006, he was sentenced to a term of 15 months' imprisonment, to be followed with 3 years of supervised release. The petitioner self-surrendered to the prison to begin service of the sentence on August 28, 2006.

The BOP's sentence calculation shows that Warner's projected release date is September 25, 2007, *via* the application of earned good time credits, and August 18, 2007, is his "pre-release preparation" date, when he is eligible to go to a CCC as a transitional place for integrating him back to the community at large. Petitioner claims that the BOP arrived at his pre-release preparation date by applying 28 C.F.R. §570.20-21, which limits a CCC placement for the service of the last months of a prisoner's sentence to a length of time not to exceed 10 percent of the prisoner's sentence.

Thus, for the petitioner's 15-month sentence, under the regulations' "10% rule," the BOP has limited his CCC placement to only a 5-week period, from August 18, 2007, to his release on September 25, 2007. Warner contends that if the BOP made its determination using the relevant

statutes, 28 U.S.C. §§3621(b) and 3624(c), and not the 10% rule contained in the regulations, then he would be able to be at a CCC for as long as 6 months. Since he is now serving the last 6 months of his sentence, he would be eligible immediately.

Therefore, on April 11, 2007, Warner filed the instant petition, asking the Court to order the BOP to follow the statutes; and he also filed a motion to expedite its review, contending, "If Warner is required to complete his administrative remedies, he would suffer irreparable injury, and could not complete the administrative remedy process before his release date."

## DISCUSSION

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v. Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The petitioner's arguments to the contrary, the matter of whether to require exhaustion in a §2241 habeas proceeding such as this is not within the scope of the Antiterrorism and Effective Death Penalty Act ("AEDPA") or the Prisoner Litigation Reform Act ("PLRA"). Nor did the Supreme Court hold that failure to exhaust was not a violation of the PLRA, in *Jones v. Bock*, ___ U.S. ___, ___, 127 S.Ct. 910, 920-21 (2007), as Petitioner also argues.

3

Rather, exhaustion is a judicially created requirement for §2241 petitions, and the Court may waive the requirement if it finds that exhaustion is futile. *See Davis v. Keohane*, 835 F.2d 1147 (6th Cir. 1987); *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995). Resort to administrative remedies is only futile if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C.F.R. §§542.10-16 (1997). Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a formal request for an administrative remedy. If the inmate cannot informally resolve his complaint with staff, then he may submit the formal written complaint (BP-9) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director within 20 calendar days of the date the warden signed the response; and finally, if dissatisfied with the response of the regional director, then he may submit an appeal (BP-11) to the office of the BOP's General Counsel.

The BOP's response times are established in 28 C.F.R. §542.18, which provides that once the inmate has filed the proper form, "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*.

The instant petitioner apparently seeks to totally short-circuit the BOP exhaustion process, alleging that he should receive emergency relief because there are only a few months remaining until

his release. The Court notes that the petitioner began serving his sentence on August 28, 2006. He offers no explanation why he waited until April 11, 2007, when he was already serving his last 6 months, to seek emergency relief which he wants to become effective immediately.

Accordingly, the Court is not inclined to grant the motion for expedited review. Moreover, one of the reasons for the exhaustion of administrative remedies requirement is to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980); and the petitioner has presented no record at all, just a canned petition with a few facts about himself inserted. However, because the petitioner has claimed that he will suffer irreparable injury if this cause is not taken up now, rather than later, the Court construes his request as one for preliminary injunctive relief and finds that such relief is not warranted.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering these factors in relation to the facts in this case, (1) Petitioner's likelihood of success on the merits is questionable at this stage. With regard to both the BOP's interpretation of §3621(b) and other courts' holding the regulations' 10% rule invalid on the ground of being contrary to the plain meaning of the statute, the cases upon which this petitioner and others rely, *i.e.,*

5

*Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), *Goldings v. Winn*, 383 F.3d 17, 28-29 (1st Cir. 2004), and *Elwood v. Jeter*, 386 F.3d 17, 28-29 (8th Cir. 2004), are from other circuits, not the Sixth Circuit.

In *Dismas-Charities, Inc. v. United States Department of Justice*, 401 F.3d 666, 668 (6th Cir. 2005), the appellate court in this circuit rejected the rationale of *Goldings* and *Elwood* with regard to the BOP's implementing its 10% rule. The ultimate decision in *Dismas-Charities* did not turn on any interpretation of 18 U.S.C. §§3621(b) or 3624(c) or any analysis of the current regulations' validity, however. The Court's disposition turned on its conclusions that the plaintiff who had brought the action lacked standing and that the BOP could use the new rule as an interpretation of the statutes without the new rule's being formally promulgated under the Administrative Procedures Act. As this was the Sixth Circuit's last word, the strength of the instant petitioner's legal position in this circuit, as to the validity of the later promulgated regulations and the permissible length of CCC placements, is unknown.

For these reasons, the Court cannot conclude that this petitioner is "likely" to succeed on the merits. Also, at the current time the record is incomplete factually, a situation which would be remedied if Warner had first exhausted the BOP administrative remedies. The petitioner has submitted no evidence that shows that the BOP even used the much-criticized regulations rather than the statutes and P.S. 7310.04.

As to factor (2), Petitioner has alleged irreparable injury in that he could be released by the time he would complete the administrative remedy process. However, he was the one who waited almost 8 months to challenge the pre-release preparation date, thus creating his own time problems. Moreover, importantly, Warner has not shown how the place of service of the last six months of his

6

confinement will injure him at all.  In short, the Court is unable to conclude that denying Warner the relief he requests now will result in *irreparable injury*, which is the legal standard.

Finally, as to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons.  *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).  The Court is not convinced that the public interest would be served by interfering with the BOP's discretion in selecting where this prisoner will spend the rest of his federal sentence and for how long he will be at any location.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)   Petitioner's motion for expedited review of his habeas petition [Record No. 3] is **DENIED**.

(2)   Derrick Warner's petition for writ of habeas corpus is **DENIED**; this action will be **DISMISSED** from the docket of the Court; and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This April 18, 2007.



Signed By:
Henry R Wilhoit Jr.
United States District Judge